UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO. 04-CR-00034-JDB

UNITED STATES OF AMERICA,

             Plaintiff,

v.

MIGUEL A. MEJIA-MUNERA,

             Defendant.

_____/

## DEFENDANT MEJIA-MUNERA'S CORRECTED MOTION FOR AN ORDER PLACING HIM IN GENERAL POPULATION, OR IN THE ALTERNATIVE, ENTRY OF AN ORDER REQUIRING THE D.C. DEPARTMENT OF CORRECTIONS TO SHOW CAUSE WHY NOT, WITH SUPPORTING AUTHORITIES

Defendant, Miguel A. Mejia-Munera, respectfully requests he be transferred to a general population unit at either the D.C. Jail or the Correctional Treatment Facility ("CTF").  In the alternative, because his placement in solitary confinement, without just cause and process, appears to violate the Fifth, Sixth, and Fourteenth Amendments of the Bill of Rights to the U.S. Constitution, Defendant requests the D.C. Department of Corrections be ordered to show cause why he should not be transferred and in support states:

**I.**

**CONCISE ARGUMENT – LCrR 47(A)**

1.  The Defendant respectfully invites this Court to ameliorate the extraordinarily harsh conditions of solitary confinement and submits there are no constitutionally valid reasons for the D.C. Department of Corrections to continue to hold him under maximum-security "lock-down" conditions, particularly after holding him under "medium

security," without incident, for a prolonged period of time.   The conditions of confinement are based upon discriminatory and constitutionally suspect reasons and are essentially punitive.   Moreover, the present conditions may be in violation of the terms of his extradition.

## II.

## PROCEDURAL BACKGROUND

2.     The Defendant stands indicted on four criminal counts involving the exportation of cocaine from Colombia to the United States and elsewhere.

3.     On March 4, 2009, Mejia-Munera was extradited to the United States. The next day he appeared before the Magistrate Court, waived his right to consideration of bond, was arraigned and entered a not guilty plea on the indictment.   The government moved for pre-trial detention.   Mejia-Munera stands detained consistent with the Bail Reform Act, which requires, among other conditions, reasonable access to counsel which presumably also means the ability to make attorney-client telephone calls, as may be periodically necessary.

4.     The Defendant awaits receipt from the United States of the particular diplomatic note(s) by and between this Nation and Colombia which set out terms and limitations on the prosecution, which probably includes conditions of incarceration.

5.     For the period of time of March 5 through April 7, 2009, the Defendant was maintained in medium security which essentially means that he was not placed in the "hole" nor subject to the proverbial "ball and chain" upon every movement, including those required to travel from his jail cell to meetings with counsel.

6.     For reasons that are both constitutionally suspect and punitive, the Defendant, on April 7, 2009, was transferred to D.C. Jail North 2, which is a pretrial maximum security facility.   By practice, procedure, and governing law, transfer to maximum security is a violation of the Defendant's statutory and constitutional rights.[1]

7.     The Defendant is now in a maximum security facility presumably based upon his national origin and because he does not have family ties within the United States.   This announced reasoning clearly places all foreigners, despite their actions within the facility during detention, at maximum security.   This is a constitutional

---

[1] Prior to filing this motion, consistent with local rule requirements, counsel attempted to resolve the matter through contact with D.C. prison officials, including but not limited to Case Manager Theresa Washington, (202) 673-8541.  Counsel is advised that NDDS Trial Attorney Schneider did not impact the custody status. The following shall describe, briefly, the proverbial "runaround."  After speaking with Ms. Washington, counsel was advised that any additional information must be obtained through Supervisor Riddick, (202) 698- 4924.  Counsel left numerous messages but was unable to contact that individual for days.   Thereafter, counsel contacted the Offices of Deputy Warden Operations (Brenda Ward) and the Deputy Warden of Programs (Orlando Harper) and requested additional information concerning the basis of the solitary confinement placement.  Counsel was then advised to contact Lieutenant Miller.  After doing so, counsel was directed to Ms. Davis and then to Mr. Denton.  Counsel ultimately did speak with two individuals who provided substantive information.  That substantive response is that because the inmate is from South America and has no family ties he is considered someone who must be placed in solitary confinement. However, this begs the issue of discriminatory punishment as a result of one's nationality in the context of extraordinarily more harsh conditions suffered than others charged with similar crimes. Counsel is aware that the corporate lawyer for the jail facility appeared and testified last month in related motion proceedings before Chief Judge Lamberth in the matter styled *U.S. v. Medina, et al.,* Case No. 06-CR-00232-RCL (D.D.C. 2009).  That testimony purportedly includes the same reasons cited here along with the prison's claim that because it does not know enough about the Colombians and their interpersonal relationships they would all be placed in maximum security. *See* Motion for a Hearing and/or Appropriate Relief, DE 72 and Order at 84.  The Order does not address conditions in solitary confinement but does require the Department of Corrections to provide, "the written procedures that govern the defendants' access to counsel and access to discovery materials -- including their access to electronic surveillance -- at CTF."  Counsel has requested additional information from the jail on the Defendant's status, but prison officials failed to respond.

violation wherein the Defendant is being punished solely for his status as a foreigner, and not for reasons based on improper conduct or other types of jail violations which ordinarily might warrant maximum security placement.[2]

8.     The Defendant is presently detained under extremely harsh, physically and psychologically debilitating conditions which substantially differ from those pre-trial detainees in either general or medium security population at the D.C. Jails.   Unlike conditions in his previous status, the Defendant, except for legal visits, now remains in solitary confinement 24 hours a day.  He has no opportunity for communal prayer.  His food is described as lesser in quality than before.   His commissary privileges are substantially reduced and he can no longer purchase what was previously available to him.   He is reduced to purchasing up to $12 monthly compared with the earlier opportunity to spend $30 monthly on commissary items for those in general and medium security population.   He no longer has access to the telephone.  He is only permitted to shower on rare occasions when it is convenient for staff.  He cannot shave.  He has no television nor does he have radio.  He has no communication with others except for his cellmate.   Even when he requires the opportunity to go to the bathroom, he is handcuffed and shackled.   The correctional officials use ankle, waist, and wrist shackles whenever he is moved for legal visits, leaving the shackles on for part of the

---

[2]  *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 n. 4, 96 S.Ct. 2562, 2566 n. 4 (1976) (characterizing ancestry as a suspect class); *Hernández v. Texas,* 347 U.S. 475, 478-79, 74 S.Ct. 667, 670-71 (1954) (ancestry and national origin are classifications protected by the fourteenth amendment); *Oyama v. California,* 332 U.S. 633, 640, 68 S.Ct. 269 (1948) (forbidding discrimination based upon parents' country of origin); *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070 (1886) (Constitution protects "without regard to any differences of race, of color, or of nationality").

visit since only a limited number of officials have the key.[3]  It is reasonable to assume that notwithstanding whatever disposition results in this case, whether by plea or trial, there will be a substantial period of time necessary to prepare for conclusion. Notwithstanding the limited advisement to counsel of the "cause," there has been no similar institutional advisement, consistent with Due Process Clause requirements, to the Defendant.  Although the jail purportedly provided the inmate with some English language documents and requested that he sign them, its contents have not been explained to him.  Nor, notwithstanding his request, has counsel been provided with a copy.

9.    Long-term confinement under solitary confinement conditions has extraordinarily adverse effects on both the Defendant, individually, and his relationship with counsel.   Even under his current conditions, given appropriate correctional standards, in order to provide appropriate care and maintenance, he must receive one hour per day to "exercise" and a daily shower.   However, he does not receive the

---

[3] *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) challenged the constitutionality of jail conditions of pretrial detainees, including, but not limited to shackling within the jail. The Second Circuit ruled in part that,

> "'[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.' *Youngberg v. Romeo,* 457 U.S. 307, 316, 102 S.Ct. 2452 (1982) (internal quotation marks omitted).  The interest survives a criminal conviction and incarceration, pretrial detention, or involuntary civil commitment.  *See Id.*  Of course, a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty.  *See Id.* at 320-21, 102 S.Ct. 2452. Under *Bell,* the Supreme Court's seminal pretrial detention case, restrictions on pretrial detainees that implicate a liberty interest protected under the Due Process Clause may not 'amount to punishment of the detainee.'  441 U.S. at 534, 99 S.Ct. 1861 (1979)."

regular opportunity to shower and does not receive the opportunity for any meaningful exercise.

10.     Because of his maximum-security status, the Defendant does not have sufficient telephonic access to counsel and is denied most privileges compared to what is afforded other non-foreign inmates at the jail.  *See United States v. Borrero-Isaza,* 887 F.2d 1349 (9th Cir. 1989).[4]

11.     Upon best information and belief, other defendants in this indictment who were extradited earlier have been kept in general population at the D.C. Jail or CTF pending their trial.

12.     More importantly, while this Defendant was maintained in "medium" security, he caused no institutional problems.  (The Defendant does not presume to request this Court to intercede to merely allow him to work at the jail in maintenance or painting or to have access to radio or television.   To the contrary, the Defendant respectfully seeks the limited consideration of this Court in altering the extraordinarily harsh conditions that did not exist before April 7.)

13.     Normally, the diplomatic note accompanying this extradition will also describe an agreement to maintain the Defendant under humane conditions; those

---

[4] In *U.S. v. Borrero-Isaza*, 887 F.2d at 1355, the Court of Appeals, 815 F.2d 1493, remanded for re-sentencing.  On remand, the District Court again imposed an enhanced sentence based on finding that defendant had arrived in United States from a source country for illegal narcotics. Defendant appealed. The Court of Appeals held that sentence imposed for narcotics offense may not be enhanced, merely because defendant arrives in United States from source country, ("After a careful review of the record, we are left with the overriding impression that the district court partially based the sentence on Borrero's national origin. Apparently, the district court believed that the best way to "send a message" to source countries was to penalize people with national ties to those countries"). *See also*, *U.S. v. Gomez,* 797 F.2d 417 (7th Cir. 1986) (stating that it "obviously would be unconstitutional" for a defendant to be sentenced more harshly on the basis of nationality or alien status).

which are now absent from his daily routine.   According to the Diplomatic Note No. 0352, *United States v. Mejia-Munera, et. al.,* Case No.: 04-CR-00034, DE 59, filed in connection with the extradition of codefendant Juan Carlos Restrepo Suarez, the United States represents to the Colombian Government that the prosecution would not include "torture or cruel and unusual punishment, degrading or inhumane treatment...."

### III.

### GOVERNING LAW

14.     Solitary confinement, colloquially referred to as "the hole," lockdown, the "SHU," is a punishment or a special form of imprisonment in which a prisoner is generally denied contact with other persons, excluding members of prison staff, and usually cited as an additional measure of protection.   However, it has also been called a form of torture.   In some cases, it is also used as a form of protective custody. *See* "Solitary confinement, *available at* http://en.wikipedia.org/wiki/Solitary_confinement.[5]

15.     The Defendant's status as a Colombian does not provide his jailers with *carte blanche* to treat him more harshly than others.   In *Iqbal v. Hasty*, 490 F.3d 143, 159-60 (2d Cir. 2007) a Muslim Pakistani pretrial detainee brought action against current and former government officials, alleging that they took a series of unconstitutional actions against him in connection with his confinement under harsh conditions including separation from the general prison population.   Finding constitutional violations, the Court notes, "But, as we discuss below, *see* Part VI, the

---

[5] The particular unit where the Defendant is confined is no doubt a form of solitary confinement.  As previously described, such prisoners are separated from the general population and face a loss of other benefits in addition to being restricted in multiple rights, including shackled visitation, lack of communal prayer, no access to the media, as well as very limited commissary privileges.

exigent circumstances of the post-9/11 context do not diminish the Plaintiff's right not to be needlessly harassed and mistreated in the confines of a prison cell … This and other rights, such as the right to be free from use of excessive force and not to be subjected to ethnic or religious discrimination, were all clearly established prior to 9/11, and they remained clearly established even in the aftermath of that horrific event."

16.    Beyond this Court's jurisdiction to entertain a *habeas* petition challenging the conditions of pretrial confinement, *see* 28 U.S.C. § 2241, *United States v. Basciano,* 369 F.Supp.2d 344, 348 (E.D.N.Y. 2005), the Court maintains jurisdiction to monitor the conditions of Defendant's confinement under the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. §§ 3141-3150. *United States v. McGriff*, 468 F.Supp.2d 445, 447 (E.D.N.Y. 2007).   Filing an independent Section 2241 petition would needlessly waste judicial resources, prolong ultimate resolution of the issue, and require an independent lawsuit which then probably would be referred to this Court consistent with LCrR 57.12 (8) (3) ("civil cases are deemed related when... they… grow out of the same event or transaction...").

17.    A condition or restriction of pretrial detention violates due process if it is punitive, because under the Due Process Clause, a pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.  *See United States v. McGriff,* 468 F.Supp.2d 445 (E.D.N.Y. 2007)[6].   "The controlling standard governing the restrictions that prison officials may place on pretrial detainees

---

[6]  "In sum, McGriff's continued administrative detention is not 'rationally ... connected' to the SIM card investigation, and is 'excessive in relation to' that purpose. *Bell,* 441 U.S. at 538, 99 S.Ct. 1861 (citation and internal quotation marks omitted). The Court must therefore conclude that the detention is exactly the type of 'punitive' detention that *Bell v. Wolfish* prohibits." *McGriff,* 468 F.Supp.2d at 448 (E.D.N.Y. 2007).

was established by the Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).   In *Wolfish,* the Supreme Court held that since a pre-trial detainee has not been convicted, the Due Process Clause does not permit prison officials to subject him to "punishment." *Id.* at 537, n. 16, 99 S.Ct. 1861." *United States. v. Basciano,* 369 F.Supp.2d 344, 350 (E.D.N.Y. 2005) (holding that solitary confinement of detainee at that time was not reasonably related to government's legitimate objective of preventing detainee, a reputed crime family boss, from allegedly planning or approving violent criminal conduct while behind bars.)[7]

18.     There is little question that "maximum security" is a more difficult ("harder") type of confinement than general population.   For many, the consequences of such deprivation can be serious.   See *McClary v. Kelly, etc.,* 4 F. Supp. 2d. 195, 207 (W.D.N.Y. 1998) for a discussion of the effect of "social isolation" on a prisoner.   District Judge Hoeveler writes, "A conclusion, however, that prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this court as rocket science. 'Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances' " *United States v. Noriega*, 40 F.Supp.2d 1378, 1379 -1380 (S.D. Fla. 1999); also citing, "The Eighth Amendment and Psychological Implications of Solitary Confinement," 21 Law and Psychology Review, Spring 1997, p. 271*; "Solitary

---

[7] Basciano's jail history issues are also reported as *Basciano v. Martinez*, 2009 WL 728371 (2d Cir. 2009), *Basciano v. Lindsay,* 2008 WL 1700442 (E.D.N.Y. 2008), 530 F. Supp. 2d. 435;   *U.S. v. Basciano,* 2008 WL 123952 (E.D.N.Y. 2008), 2007 WL 4555892; *Basciano v. Martinez,* 2007 WL 4410048 (E.D.N.Y. 2007), and *Basciano v. Martinez,* 2007 WL 2119908 (E.D.N.Y. 2007).

Confinement, Legal and Psychological Considerations," 15 New England Journal on Criminal and Civil Confinement, 301, Summer 1989.

19.    In multiple cases, the district courts have exercised their jurisdiction under the Bail Reform Act and have ordered an infamous criminal defendant released from solitary confinement conditions.    *See United States v. Gotti*, 755 F.Supp. 1159 (E.D.N.Y. 1991) (held that fact that pretrial detainees were charged with multiple murders, conspiracy and solicitation to murder, and obstruction of justice, including witness tampering did not justify their placement in administrative detention, in absence of evidence that since detainees had been in custody they committed an act or omission which posed a serious threat to inmates or to security of institution.); *United States v. Basciano*, *supra; United States v. Noriega, supra;* (further citations omitted.)   These cases describe either the intercession of the federal district court in jail matters involving the reputed leader of the Mafia, John Gotti, and another Mafia Don, Vincent Basciano, in a sister district, or a recognition of the punishing aspects of solitary in the case of the deposed corrupt drug dealing leader of Panama, General Manuel Noriega.

WHEREFORE, for the reasons given above, Defendant respectfully requests the Court order the Department of Corrections to transfer him to general population at either the D.C. Jail or CTF, or show cause why continuing separation in solitary confinement is necessary.

Respectfully submitted,

NEIL M. SCHUSTER
555 N. E. 15th St., Suite 2-C
Miami, FL   33132
Telephone:  305-416-0324
Facsimile:  305-416-0325
Email: nmschus@bellsouth.net


By:_____*s/ Neil M. Schuster*_____
            Neil M. Schuster, Esq.
            DC Bar No. C00042



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has

been furnished by CM/ECF this **4th day of May, 2009** to Lawrence Schneider, Trial

Attorney, U.S. Department of Justice, Narcotics & Dangerous Drug Section, 1400 New

York Ave. N.W., Room 11-300, Washington, DC 20530.


By:_____*s/ Neil M. Schuster*_____
            Neil M. Schuster, Esq.
            Florida Bar No. 216909